THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**DROGUERIA BETANCES, LLC,**

    **Plaintiff,**

v.

**YOUNG APPAREL EMPIRE, INC., et al.,**

    **Defendants.**

Civ. No. 22-01362 (MAJ)

## OPINION AND ORDER

### I.   Introduction

On July 29, 2022, Plaintiff Droguería Betances, LLC ("Plaintiff" or "Droguería Betances") filed the instant action against Defendants Young Apparel Empire, LLC, and Mark Gazoz ("Defendants") asserting claims of breach of contract, unjust enrichment, and action to recover possession against Defendant Young Apparel Empire, LLC. Plaintiff also asserts tort claims against Defendant Mark Gazoz, and fraud against both Defendants. (**ECF No. 1**). Plaintiff's request for relief includes consequential, compensatory, and punitive damages; return of monies paid; costs; attorney's fees; legal interest per Puerto Rico Rule of Civil Procedure 44.3;[1] and any other relief the Court deems fair and equitable. *Id.*

Defendants did not file an Answer to the Complaint, and on March 4, 2023, Plaintiff filed a Motion for Default Judgment. (**ECF No. 36**). In the Motion for Default Judgment, Plaintiff requested the Court grant it monetary relief in the pre-interest amount of $194,580. (**ECF No. 36 at 15**). This amount includes (1) the $149,310 it paid to Defendant for goods that were never delivered; (2) Plaintiff's lost profits of $44,793, which was calculated using a thirty percent mark-

---

[1] Plaintiff only asks for "prejudgment interest" in its Complaint, and specifically states "legal interest pursuant to Puerto Rico Rule of Civil Procedure 44.3" in its Motion for Default Judgment. (**ECF No. 36 at 15**).

up rate;[2] and (3) court costs of $477, which includes the filing fee of $402 and service of process fee of $74.[3] *Id.* at 15 n.5.

On March 30, 2023, the Court granted Plaintiff's Motion for Default Judgment as it pertained to liability and the unrefunded payment of $149,310. (**ECF No. 37**). However, the Court ordered Plaintiff to file a separate motion with regards to its request for attorney's fees and costs and scheduled a hearing regarding the claim for damages for April 27, 2023, at 10:00am. *Id.*

The damages hearing took place on April 27, 2023. (**ECF No. 38**). At the evidentiary hearing, Plaintiff also requested reimbursement for the interest charges it has accrued on the loan used to pay Defendant for the goods it never tendered.[4] (**Hrg. Tr. at 19:20-20:8**). The comptroller of Droguería Betances, Mr. Edwin Ruiz ("Mr. Ruiz"), testified. As part of his testimony, four (4) documents were admitted into evidence, to wit: the purchase order Plaintiff drafted (Exhibit 1), the invoice from Defendant for the transaction (Exhibit 2), the wire transfer details pertaining to the funds Plaintiff sent to Defendant (Exhibit 3), and interest payment history on the loan used to pay Defendant (Exhibit 4). (**ECF No. 39**). The only issue pending before the Court currently is what damages, if any, Plaintiff is entitled to.

For the reasons stated hereafter, the Court GRANTS Plaintiff's request for lost profits in the amount of $44,793 and reimbursement for the $12,098.48 in interest it has accrued from January 19, 2022, until April 30, 2023.[5]

---

[2] To achieve the total profits value indicated, Plaintiff multiplied the total cost of each kit, which is $19.75, by 0.30 (mark-up) which "would give us the selling price less the cost of $19.75." (**Hrg. Tr. at 31:1-13**). Thus, the total value of lost profits is $44,793. (**Hrg. Tr. at 31:1-13**). Plaintiff reasonably based this calculation on the notion that every kit would have been sold, as further detailed.

[3] Plaintiff did not renew its request for punitive damages in its Motion for Default Judgment.

[4] The value presented by Plaintiff at the hearing was $12,221.89, which is the interest accrued from January 12, 2022, through April 30, 2023. *Id.* at 31:12-19.

[5] This value is calculated by subtracting the interest charges incurred for exactly one week of January of 2022 from the total amount. In January of 2022, the interest charges were $17.63/day. (**ECF No. 39-4 at 2**). Accordingly, $123.41 was subtracted from $12,221.89 to equal $12,098.48.

## II.　Legal Standard

Rule 55 of the Federal Rules of Civil Procedure governs the entry of default judgments in federal court. Fed. R. Civ. P. 55(a) authorizes a court to enter a default judgment against a party who has failed to plead or otherwise defend an action. *Avilés-Alicea v. Municipality of San Juan*, 04-cv-1602 (ADC), 2008 WL 11501535, at *1 (D.P.R. Sept. 16, 2008) (citing Fed. R. Civ. P. 55(a)). In cases where a plaintiff's claim is for a sum certain, default judgment may be entered by the Clerk. Fed. R. Civ. P. 55(b)(1). "In all other cases, the party seeking the default judgment must apply to the Court." *Avilés-Alicea,* 2008 WL 11501535, at *1 (citing Fed. R. Civ. P. 55(b)(2)). In such cases, the Court may conduct hearings to consider the merits of the case and potential damages to be awarded. *KPS & Associates, Inc. v. Designs By FMC, Inc.*, 318 F.3d 1 at 19 (1st Cir. 2003) ("[A] district court can enter a final judgment without requiring further proof of damages only in limited situations."); *Ramos-Falcón v. Autoridad de Energía Eléctrica*, 301 F.3d 1 at 2 (1st Cir. 2002) (" . . . the court may conduct such hearings or order such references as it deems necessary and proper . . .") (quoting Fed. R. Civ. P. 55(b)(3)).

## III.　Applicable Law and Analysis

Under the Puerto Rico New Civil Code, "[t]he indemnification of damages for the breach of the obligation, or for its partial, late or defective fulfillment includes consequential damages and lost profits." 31 L.P.R.A. § 9331.[6] Lost profits are foregone future profits that were or should have been foreseeable at the time the contract was formed. *Total Petroleum P.R. Corp. v. Villa Caparra Esso Serv. Ctr.*, 16-cv-2436 (PAD/BJM), 2018 WL 6132540, at *6 (D.P.R. Oct. 30, 2018), *report and recommendation adopted sub nom. Total Petroleum Puerto Rico Corp. v. Fonseca-Marrero*, 16-cv-2436 (PAD), 2018 WL 6131777 (D.P.R. Nov. 20, 2018). The calculation of lost profits "must at least rest on a reasonable basis and not mere speculation or guess.*" N. Costa, LLC v. 115 Mgt., Inc.*, 20-cv-1468 (BJM), 2022 WL 4115634, at *8 (D.P.R. Sept. 9, 2022) (citing

---

[6]　The Puerto Rico Civil Code of 1930 equivalent statute is 31 L.P.R.A. § 3023.

*Computec Sys. Corp. v. Gen. Automation, Inc.*, 599 F. Supp. 819, 827 (D.P.R. 1984)). "Even upon default, a plaintiff still bears the burden of proving damages with reasonable certainty." *N. Costa, LLC v. 115 Mgt., Inc.*, 2022 WL 4115634 at *8. Notably, "expert testimony *is not* essential to support the amount awarded for lost profits when the testimony offered by plaintiffs show that the witnesses who gave such testimony are well-versed persons, who place the judge in an adequate position to estimate the lost profits award." *Nilda I. Vélez Rodríguez et al., v. Pedro Amaro Cora, et al.*, RE-90-563, 1995 WL 905697, at 10 (P.R. Apr. 10, 1995) (emphasis in original); *Toledo Boneta Dairy, Inc. v. Ganaderos Alvarado, Inc.,* 2012-0184, 2019 WL 4418540, at *4 (P.R. Cir. June 28, 2019).

With regards to interest accrued, "when a party breaches a contract, he is liable to the aggrieved party for damages which were foreseen or may have been foreseen." *Oriental Fin. Group, Inc. v. Fed. Ins. Co., Inc.,* 483 F. Supp. 2d 161, 165 (D.P.R. 2007); *Villa v. Pérez-Cacho*, 20-cv-1586 (PAD), 2021 WL 3276093, at *11 (D.P.R. July 31, 2021). In the event of fraud however, the debtor is liable for all damages arising from its non-compliance. 31 L.P.R.A. § 9332.[7]

> The Puerto Rico Supreme Court has recognized that contractual dolo is a broad term that includes deceit, fraud, misrepresentation, undue influence, and other insidious machinations. For example, although there may be dolo without fraud, fraud will always entail dolo . . . Article 1060[8] of the Civil Code establishes that the party who engages in dolo is liable for all damages which clearly may originate from the nonfulfillment of the obligation. This imposition of damages (for dolo-type performance of a contract) is broader than that resulting from a good faith breach of contract, where, in contrast, damages are limited to those foreseen or which may have been foreseen, at the time of constituting the obligation, and which may be a necessary consequence of its nonfulfillment.

*Puerto Rico Tel. Co., Inc. v. SprintCom, Inc.*, 662 F.3d 74, 99 (1st Cir. 2011) (internal citations and quotations omitted); *see also Colón v. Blades*, 717 F. Supp. 2d 175, 185 (D.P.R. 2010) ("when a party acts with bad faith (dolo) in breaching a contract, the aggrieved party may recover all damages that originate from the nonfulfillment of the obligation.").

---

[7] The Puerto Rico Civil Code of 1930 equivalent statute is 31 L.P.R.A. § 3024.
[8] The Puerto Rico Civil Code of 2020 equivalent is Article 1168 31 L.P.R.A. § 9332.

### i. Mr. Ruiz' Testimony

According to his testimony, which the Court finds credible and truthful, Mr. Ruiz obtained a bachelor's degree in finance from Interamerican University in Puerto Rico in 2008. (**Hrg. Tr. at 3:12-17**). He began working for Plaintiff in 2011 as an accounts payable analyst. *Id.* at 4:23. In 2013, he was promoted to assistant comptroller, and in 2017, he was promoted to comptroller of the company, a position he still holds. *Id.* at 5:16, 6:14-17. Mr. Ruiz testified that his duties as the comptroller of the company include managing the financials of the entire company, analyzing transactions, sales, accounts receivables, and accounts payables. *Id.* at 6:22. As the company comptroller, he also reports to the Chief Financial Officer. *Id.* at 7:3-5. Mr. Ruiz further testified that Plaintiff's main business is distributing pharmaceutical products to community pharmacies, hospitals, specialty pharmacies, doctors, clinics, and veterinarians. *Id.* at 7:21-25. Notably, Mr. Ruiz testified that Plaintiff works with and/or supplies over 800 community pharmacies. *Id.* at 18:14-18.

Mr. Ruiz testified that during the spread of the COVID-19 Omicron variant in December 2021, there was a high demand for at home test kits. *Id.* at 8:12-9:3. He stated that during this time, many of Plaintiff's specialty pharmacies reached out to the sales team inquiring as to whether they would be obtaining home test kits anytime soon. *Id.* at 33:9-15. Importantly, he testified that the window of high demand was short, as the government was expected to start providing free home test kits. *Id.* at 16:12-19. Accordingly, it was imperative that if Plaintiff were to order home test kits at all, they needed to arrive quickly. *Id.* at 16:6-19. It is for this reason that they engaged in business dealings with Defendant. *Id.* at 16:6-10.

The facts of the case are well delineated in Plaintiff's motion for default judgment. (**ECF No. 36**). In pertinent part, Plaintiff ordered and paid for 7,560 home tests kits from Defendant which never arrived and were never refunded. (**ECF No. 36 at 3-4**). As such, Plaintiff seeks consequential damages in the form of lost profits in the amount of $44,793, as well as $12,221.89

in interest accrued on the line of credit used to pay Defendant for the goods it never tendered.[9] (**ECF No. 36 at 15 n.5**); (**Hrg. Tr. at 30:12-19**). The lost profits figure is derived from a 30% markup rate, which Mr. Ruiz testified is the maximum profit permitted by the government for all COVID related products. (**Hrg. Tr. At 17:16-25**). The interest calculation is based on the variable rate charged by the bank from which Plaintiff obtained the loan. *Id.* at 25:10-12, 30:12-19. *See also* Exhibit 4.

Importantly, when Mr. Ruiz was asked by the Court what percentage of the goods ordered he anticipated Plaintiff would be able to sell, Mr. Ruiz stated 100% of them would have been sold within a few days. *Id.* at 18:19-19:4. He attributes this opinion to the high demand for at home test kits at the time, and the specific requests from Plaintiff's customers for them.[10] *Id.* at 33:9-15. Mr. Ruiz testified that the 800 community pharmacies Plaintiff works with do not have access to the same supply chains as big pharmacies like Walgreens and CVS, and as such, were in dire need of the kits. *Id.* at 32:1-14. When asked by the Court whether preorders were made, Mr. Ruiz testified that it is not Plaintiff's typical practice to accept preorders for goods not currently in their inventory. *Id.* at 32:15-19. However, he stated that the reason Plaintiff reached out to Defendant in the first place was due to the many informal requests from customers for the at home test kits, so he was confident they would have been sold out within days. *Id.* at 33:9-15, 18:19-19:4.

Finally, at the evidentiary hearing, Mr. Ruiz testified that Plaintiff has accrued $12,221.89 in interest charges as of April 30, 2023. *Id.* at 30:8-19; (**ECF No. 39-4**). See Exhibit 4. Mr. Ruiz testified that because the goods never arrived and Plaintiff has not yet been refunded, they have been unable to pay off the line of credit used to purchase them. (**Hrg. Tr. at 19:20-20:8**). Thus, interest has, and continues to accrue. *Id.*

---

[9] The Court already granted Plaintiff's request for $149,310 which is the amount it paid for the test kits that never arrived nor were refunded.

[10] Per covid.cdc.gov, January 2022 was part of the period with the highest rate of COVID positivity in Puerto Rico throughout the entire pandemic, with an approximately 30% positivity rate on January 1, 2022. *See* Centers for Disease Control and Prevention, COVID Data Tracker, Atlanta, GA: US Department of Health and Human Services, CDC; 2023, May 11. https://covid.cdc.gov/covid-data-tracker.

### ii. Lost Profits

As previously mentioned, "expert testimony *is not* essential to support the amount awarded for lost profits when the testimony offered by plaintiffs show that the witnesses who gave such testimony are well-versed persons, who place the judge in an adequate position to estimate the lost profits award." *Nilda I. Vélez Rodríguez et al., v. Pedro Amaro Cora, et al.*, 1995 WL 905697, at 10 (emphasis in original); *Toledo Boneta Dairy, Inc. v. Ganaderos Alvarado, Inc.*, 2012-0184, 2019 WL 4418540, at *4 (P.R. Cir. June 28, 2019). As comptroller of the company, Mr. Ruiz is intimately involved with the purchasing, sales, and all other financial aspects of Plaintiff. (**Hrg. Tr. at 6:14-7:2**). Ultimately, the Court accepts his testimony that all 7,560 home test kits would have been sold. If even half, or 400 of the community pharmacies Plaintiff works with placed orders for the home test kits, that would require only 18 home test kits per store. It is not unreasonable to find that this metric would have been reached, particularly since the positivity rate in Puerto Rico at the time was at approximately 30%. In fact, it is likely that more than half of the community pharmacies Plaintiff works with would have requested kits. This is beyond mere speculation or guessing, given Mr. Ruiz's testimony that "[t]hese would have been sold almost immediately since we have 800 community pharmacies" that do not have access to the supply chains Walgreens and CVS do. *Id.* at 31:24-32:14. And even more so, given the fact that January 2022 was part of the period with the highest rate of COVID positivity throughout the entire pandemic in Puerto Rico, with approximately 30% of tests returned as positive. *See Centers for Disease Control and Prevention, COVID Data Tracker, Atlanta, GA: US Department of Health and Human Services, CDC; 2023, May 11. https://covid.cdc.gov/covid-data-tracker*. Accordingly, Plaintiff is entitled to the $44,793 it requests for lost profits.

### iii. Interest Accrued

In support of its claim for the interest accrued on the line of credit, Plaintiff presented the Court with financial statements prepared by Mr. Ruiz detailing the monthly interest charges. (**Hrg. Tr. at 21:2-20**); (**ECF No. 39-4**); *see also* Exhibit 4. Mr. Ruiz testified that these

documents are made on a monthly basis to ensure Plaintiff is being charged the correct amount of interest by the bank. (**Hrg. Tr. at 21:2-15**). The relevant charges began on January 12, 2022—the date Plaintiff wire transferred the money to Defendant—and are current through the end of April of 2023. (**ECF No. 39-4 at 1-17**). The total amount accrued as of the end of April 2023 is $12,221.89. *Id.* at 1.

As a reminder, "when a party breaches a contract, he is liable to the aggrieved party for damages which were foreseen or may have been foreseen." *Oriental Fin. Group, Inc.*, 483 F. Supp. 2d at 165; *Villa v. Pérez-Cacho*, 20-cv-1586 (PAD), 2021 WL 3276093, at *11 (D.P.R. July 31, 2021). And in the event of fraud, the debtor is liable for all damages arising from its non-compliance. 31 L.P.R.A. § 9332. Notably, the Court found Defendants liable for both breach of contract and fraud. (**ECF No. 37**).

The interest charges Plaintiff seeks reimbursement for directly stem from Defendant's breach of contract and are reasonably foreseeable. Thus, Plaintiff is entitled to them. Regardless, Plaintiff is entitled to them pursuant to 31 L.P.R.A. § 9332, which holds debtors liable for all damages in the case of fraud. However, in the interest of fairness, the Court will slightly reduce the amount owed to account for the fact that it would have taken Plaintiff a few days to sell the items, and thus, a few days of interest charges were inevitable. Therefore, the Court will award Plaintiff the interest it has accrued beginning on January 19, 2022, one week after the agreed upon delivery date, until April 30, 2023, for a total of $12,098.48.[11] *Id.* at 2.

## IV. Conclusion

Accordingly, the Court finds that Plaintiff has proven their damages by a preponderance of the evidence, and thus, awards the $44,793 to Plaintiff in lost profits, and the $12,098.48 in interest it has accrued on the line of credit from January 19, 2022, until April 30, 2023.

---

[11] This value is calculated by subtracting the interest charges incurred for exactly one week of January of 2022 from the total amount. In January of 2022, the interest charges were $17.63/day. (**ECF No. 39-4 at 2**). Accordingly, $123.41 was subtracted from $12,221.89 to equal $12,098.48.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of May 2023.

                                                **S/ MARÍA ANTONGIORGI-JORDÁN**
                                                        **United States District Judge**